UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEGGY A. EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| VOCAMOTIVE, INC., GIBSON ) | |
| ELECTRIC CO., INC., and ZURICH ) | No. 11 C 8197 |
| AMERICAN INSURANCE CO., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Peggy A. Evans sued Vocamotive, Inc. ("Vocamotive"), Gibson Electric Co., Inc. ("Gibson"), International Rehabilitation Associates, Inc. ("Intracorp"), Zurich American Insurance Company ("Zurich"), and Intracorp employee James Cooper for violations of the Americans with Disabilities Act ("ADA"), 42 U.S. § 12181 *et seq*, and state-law claims of intentional infliction of emotional distress ("IIED"), misrepresentation, and retaliatory discharge. Evans previously voluntarily dismissed her claims against Intercorp and Cooper without prejudice. Now before the court is Zurich's motion to dismiss Counts III and VI of Evans's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Evans has failed to allege facts that satisfy the elements of an IIED claim, the court dismisses Count III without prejudice. The court dismisses Count VI with prejudice because Evans's misrepresentation claim is barred by the statute of limitations applicable to such claims under Illinois law.

## I. BACKGROUND

For the purposes of this motion to dismiss, the facts alleged in Evans's First Amended Complaint are taken as true. Evans was employed by Gibson as a Construction "A" Electrician. She suffered severe injuries when she fell from a ladder on July 14, 2004. Zurich was Gibson's worker's compensation carrier. Intracorp performed case management services for Evans's medical needs, and Cooper was the case manager assigned to work with Evans and her treating physicians between July 30, 2004, and August 8, 2007, when Intracorp removed Cooper from the case. Zurich provided Evans with a brochure stating, "If your injury is serious or involves complicated medical issues a medical nurse will be assigned." On August 3, 2004, Cooper sent a letter to Evans implying that he was qualified and knowledgeable to medically manage her case. Evans signed a consent form allowing Cooper access to her medical information from August 10, 2004, through October 10, 2005. Evans claims that she signed the form based on her presumption that Cooper was a qualified registered nurse. On January 13, 2006, Evans learned that Cooper was not in fact a registered professional nurse.

The First Amended Complaint includes twelve pages of factual allegations concerning Cooper's alleged mismanagement of Evans's medical case between 2004 and 2007. Essentially, Evans claims that, because of Cooper's mismanagement of the case, Zurich denied her medical benefits, including second medical opinions, surgery, prescriptions, and treatment plans. Evans claims that her medical condition deteriorated during that time. She also claims that Cooper caused Zurich to deny her Temporary Total Disability benefits. According to the complaint, those benefits were suspended from September 26, 2005, through November 29, 2005; again from December 27, 2005,

through March 22, 2006; from September 26, 2006, until November 29, 2006; and from January 4, 2007, to the present.

On March 15, 2010, Vocomotive received a prescription from Zurich for Evans to have vocational training. Because she had to take a train, a bus, and then a cab to reach Vocamotive, Evans requested to attend a facility closer to her home, but that request was denied. After an interview and vocational testing, Evans was scheduled for classes and training from June 3, 2010, through October 4, 2010, to prepare her for a clerical position. She was also given a prescription for Work Hardening Conditioning and attended Work Hardening Therapy (a type of physical/occupational therapy) from May 13, 2010, until July 15, 2010. Evans was scheduled to attend sixteen weeks of job retraining classes on Mondays and Wednesdays. Evans asked to attend classes on Tuesdays and Thursdays instead, but that request was denied.

From June 3, 2010, to July 28, 2010, Zurich paid for Evans to attend job retraining and rehabilitation classes at Vocamotive. On July 28, 2010, Evans became ill. One of her treating physicians, Dr. May, ordered her to stay home for two weeks due to neck and carpal tunnel pain and stress. When Evans returned to class on August 23, 2010, she was told by Vocamotive's staff that she should not be in the class, and Zurich did not pay Evans temporary worker's compensation benefits for that week of classes. On September 1 and September 13, 2010, Evans tried to attend classes but was again told by Vocamotive that she should not be in the classes. She lost additional worker's compensation benefits for those weeks. On September 13, Evans was told to leave Vocamotive's premises after the police were called. Vocamotive did not permit Evans to

return to job retraining classes. Evans registered for classes at Truman College, but Zurich refused to pay for those classes.

Evans further claims that, on June 24, 2010, she received a referral to Mount Sinai hospital from Dr. May, but Zurich denied the referral. On June 29, 2010, Zurich rejected an arbitrator's recommendation that Zurich pay Evans $11,000.00 in owed Temporary Total Disability Benefits. On July 12, 2010, Evans went to an appointment with Dr. Gireesan, who referred her to a psychiatrist, but Zurich denied the referral. Evans claims that she has suffered from depression and psychological issues as a result of Zurich's denial of her job retraining and medical benefits.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include allegations that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;'" otherwise, "the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court treats all well-pleaded allegations as true and draws all reasonable factual inferences in the plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

Claims of fraud or misrepresentation are also governed by Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." In order to survive a motion to dismiss a claim of fraud, a plaintiff must allege the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the

4

method by which the misrepresentation was communicated to the plaintiff. *Borsellino v. Goldman Sacks Grp., Inc.*, 447 F.3d 502, 507 (7th Cir. 2007). The absence of any necessary detail renders the pleading deficient.

### III. ANALYSIS

**A. Intentional Infliction of Emotional Distress (Count III)**

Count III of the First Amended Complaint is an IIED claim against Zurich. Evans alleges that Zurich arranged with Vocamotive to provide vocational rehabilitation and job retraining services to Evans on or about June 3, 2010, and that Zurich controlled the parameters of the services provided. According to Evans, Zurich had a duty to exercise the degree of care required of reasonably well-qualified providers of such services. She further alleges that Zurich was aware that Evans was susceptible to emotional distress due to a disabling physical condition. Evans claims that Zurich failed to provide her with job retraining, knowing that her inability to work and support herself would cause her severe emotional distress, and that Zurich withheld disability checks to which Evans was entitled when Vocamotive refused to allow Evans to attend job retraining. As a result of these acts, Evans claims that she has suffered damages, including major depression which required medication and rendered her unable to obtain employment.

Zurich argues that Evans's claim for IIED fails as a matter of law because Evans has not alleged facts demonstrating that Zurich engaged in extreme and outrageous conduct. Zurich claims that under Illinois law, a plaintiff cannot sue an insurer for IIED based on the denial of an insurance claim. Alternatively, Zurich argues that Evans's allegations are insufficient to satisfy the elements of an IIED claim: that (1) defendant's conduct was extreme and outrageous; (2) defendant either intended to inflict severe

5

emotional distress or knew there was a high probability that its conduct would do so; and (3) defendant's conduct actually caused severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Zurich argues that Evans has failed to satisfy any of the three required elements.

Although the court disagrees that an insurer may never be sued for IIED, *see, e.g.*, *Eckenrode v. Life of Am. Ins. Co.*, 470 F.2d 1, 4 (7th Cir. 1972) ("[E]xtreme 'bullying tactics' and other 'high pressure' methods of insurance adjusters seeking to force compromises or settlements may constitute outrageous conduct."), it agrees with Zurich that Zurich's alleged conduct was not sufficiently "extreme and outrageous" to satisfy the first element of an IIED claim. In Illinois, the standard required to allege a claim for IIED is very high. Illinois courts have consistently held that the conduct alleged must be particularly egregious. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle plaintiff to punitive damages for another tort. Liability has been found only when the conduct is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (quoting Restatement (Second) of Torts § 46, cmt. D (1965)). The conduct must be considered intolerable in a civilized community. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001); *Feltmeier*, 798 N.E.2d at 80-81.

The court finds that an ordinary member of the community would not conclude that Zurich's conduct was beyond all bounds of decency. Evans alleges that Zurich failed

6

to provide job retraining services, failed to pay for Evans to attend Truman College, refused to approve several medical referrals, and rejected an arbitrator's decision as to Evans's claim for Temporary Total Disability Benefits. Most of the allegations concerning Evans's difficulties in obtaining job retraining involve Vocamotive, not Zurich. Although Evans contends in her Reply that Vocamotive acted as "Zurich's agent," she points to no facts alleged in the complaint that suggest that such a relationship existed. Zurich paid for Evans's worker's compensation benefits and training while Evans attended classes attended until July 28, 2010, but Evans then stopped attending the classes for medical reasons. Evans alleges no facts to support an inference that Zurich's discontinuation of her benefits was outrageous under the circumstances. Accepting Evans's allegations as true, the court finds that the facts support an inference that Zurich's conduct was at worst unreasonable or wrongful, but not outrageous. Evans also does not explain why Zurich refused to pay for her to attend Truman College; this makes it impossible for the court to infer that that decision was extreme and outrageous.

The same is true of Zurich's denials of Evans's medical referrals and its rejection of the arbitration decision. An insurance company is not required to approve all referrals or to accept a non-binding arbitration decision, and, even if Zurich's actions were unreasonable or wrongful, the facts as alleged by Evans do not support a conclusion that this conduct was especially shocking. Illinois courts have rejected IIED claims based on allegations of equally unreasonable conduct. *See, e.g.*, *Debolt v. Mut. of Omaha*, 371 N.E.2d 373, 374-76 (Ill. App. Ct. 1978) (affirming dismissal of IIED claim where defendant insurer delayed and then ceased disability payments, forcing plaintiff to file suit, and otherwise frustrated plaintiff's efforts to secure his benefits). In summary, the

7

court cannot conclude based on the facts alleged in the First Amended Complaint that Zurich's denial of Evans's benefits supports a claim of IIED.

Nor do the allegations support the second and third elements of an IIED claim, that Zurich acted intentionally or recklessly, and that the alleged distress was "severe." As to the second element, although Evans alleges that Zurich was aware she was susceptible to emotional distress, nothing in the complaint indicates that Zurich "knew that severe emotional distress was certain or substantially certain to result from" its actions. *Tobolt v. Allstate Ins. Co.*, 393 N.E.2d 1171, 1177 (Ill. App. Ct. 1979). Evans argues that Zurich knew she had "a disabling condition which prevented her from working to support herself." (First Am. Compl. ¶ 238, ECF No. 50.) But that predicament does not distinguish Evans from any other worker with a disability.

As to the third element, "[a]s a general rule, the law will intervene only when the distress inflicted is so intense and painful that no reasonable person could be expected to endure it." *Knysak v. Shelter Life Ins. Co.*, 652 N.E.2d 832, 840 (Ill. App. Ct. 1995) (quoting *Mucklow v. John Marshall Law Sch.*, 531 N.E.2d 941 (Ill. App. Ct. 1988)). Evans alleges that she was diagnosed with depression resulting from the denial of her benefits. But Illinois courts have rejected the idea that the denial of benefits in itself establishes that a person suffered extreme distress. "No doubt, any person whose insurance claim for a substantial amount of money was denied will suffer depression. Reasonable people, however, endure the denial of expected benefits and financial reversals." *Id.*

As Evans has failed to allege the required elements of an IIED claim under Illinois law, the court dismisses Count III of the First Amended Complaint without

prejudice. The court will allow Evans to amend her complaint if she believes she can allege facts that satisfy the elements of an IIED claim.

**B. Misrepresentation (Count VI)**

Evans claims that Zurich and Cooper misrepresented to Evans that Cooper was a registered nurse, through his title of Senior Field Case Manager and Zurich's documentation stating that case managers assigned to those with serious medical issues were medical nurses. Evans claims that she relied on these misrepresentations to her detriment in allowing Cooper to access her medical information, and in following his recommended course of medical treatment. She further claims that Zurich allowed Cooper to make medical determinations that he was not qualified to make.

Zurich argues that Evans's claim for misrepresentation is barred by the statute of limitations. In her Response, Evans raises no argument responding to Zurich's motion to dismiss Count VI. Evans's First Amended Complaint states that on January 13, 2006, "Evans learned for the first time that Cooper was not a registered professional nurse." (First Am. Compl. ¶ 83.) This was five years and ten months before Evans's lawsuit was filed on November 16, 2011. (*See* Compl., ECF No. 1.) Although Evans does not specify whether her claim is for tortious or negligent misrepresentation, the statute of limitations for both types of claim is five years. *See* 735 Ill. Comp. Stat. 5/13-205. "Under Illinois law, a plaintiff must bring a claim for both fraud and negligence within five years of its accrual." *Wolinsky v. Life Ins. Co. of Ga.*, No. 01 C 5367, 2002 WL 664075, at *2 (N.D. Ill. Apr. 23, 2002).

The court agrees with Zurich that Evans's misrepresentation claim is barred by the statute of limitations. The "purpose of a statute of limitations is . . . to discourage the

9

presentation of stale claims and to encourage diligence in the bringing of actions." *Hyon Waste Mgmt. Servs., Inc. v. City of Chi.*, 574 N.E.2d 129, 132 (Ill. App. Ct. 1991). The statute of limitations period begins to run when the plaintiff's interests are invaded. *Id*. To the extent that Evans may bring a claim for fraudulent or tortious misrepresentation based on her allegations that Zurich misrepresented to her that Cooper was a registered nurse, that claim accrued when Evans became aware of the alleged misrepresentation on January 13, 2006, because she was "reasonably put on notice of the alleged injury" at that time. *See Wolinsky*, 2002 WL 664075, at *2.[1] More than five years passed before Evans filed her lawsuit against Zurich. Evans has offered the court no reason why the statute of limitations does not apply to her misrepresentation claim. Accordingly, the court dismisses Count VI of the First Amended Complaint.

## IV. CONCLUSION

The court dismisses Count III of the First Amended Complaint without prejudice, and dismisses Count VI with prejudice. If Evans believes that she can allege facts supporting an IIED claim against Zurich in accordance with the principles set out in this opinion, she must file an amended complaint by October 17, 2012.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 18, 2012

---

[1] Although in cases of "continuing violations," the statute of limitations does not begin to run until the tortious acts cease, "[a] continuing violation . . . is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Hyon*, 574 N.E.2d at 132-33; *see also Feltmeier*, 798 N.E.2d at 86 ("A continuing tort . . . does not involve tolling the statute of limitations because of delayed or continuing injuries."). Thus, to the extent that Evans alleges continuing injuries stemming from Zurich's misrepresentation about Cooper's qualifications, those allegations would not toll the statute of limitations.